**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 13-cr-00314-RBJ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

QUINCY CUMMINGS,

      Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTION
TO GRADE B VIOLATION (ECF 65) AND SENTENCING POSITION**

---

      The United States of America, by Robert C. Troyer, United States Attorney for the District of Colorado, and Martha A. Paluch, Assistant United States Attorney, hereby responds to Defendant's Objection to Grade B Violation, and submits its sentencing position in advance of the defendant's September 11, 2018 sentencing hearing.

**Background**

      1.    On May 25, 2018, an arrest warrant was issued for the defendant on the basis of a Petition For Warrant on Person Under Supervision.   ECF 50, 51.   The Petition alleges four violations:   two pertain to the defendant's admitted use of methamphetamine (Violations 1 and 3), one addresses a positive urinalysis (UA) for cocaine (Violation 2), and a fourth violation is based on the defendant's failure to successfully complete the Stout Street Foundation Residential Treatment Program

1

(SSF) due to his possession of a cell phone.   ECF 50.[1]   As alleged in Violations 1 and 3, the defendant admitted to using methamphetamine when confronted by his probation officer with the results from UAs taken from the defendant on February 15, 2018, and March 8, 2018.   His February 15, 2018 UA also tested positive for cocaine.

2.      The defendant objects to the classification of his drug use as Class B violations.   The defendant claims that personal drug use while on supervised release "has always been considered a Grade C violation," and only recently has Probation alleged that these violations constitute Grade B violations.   ECF 65.   The Probation Officer assigned to this case advises that various probation officers in the Denver office have classified positive drug tests as Grade B violations for the past few years, but as a whole, the office has charged drug use as Grade B violations for the past year. However, courts have categorized it as such for much longer, as detailed below.

**Argument**

3.      Defendant's Objection should be denied.   A defendant's repeated voluntary use of a drug, as disclosed by positive urine specimens, provides sufficient evidence that the defendant possessed the drug before taking it.   *United States v. Rockwell*, 984 F.2d 1112, 1114 (10th Cir. 1993), *abrogated on other grounds by Johnson v. United States,* 529 U.S. 694 (2000); *accord. United States v. Battle*, 993

---

[1] The Petition for the defendant's arrest recounts information obtained from SSF regarding its belief that the cell phone the defendant was found to be in possession of contained text messages indicating the defendant and a coworker intended to physically harm another resident of SSF.   ECF 50 at 3.   Subsequent investigation did not support this characterization of the text messages at issue.   For this reason, the government notes solely that the defendant was discharged from SSF due to his prohibited possession of a cell phone.

F.2d 49, 50 (4th Cir. 1993); *United States v. Courtney*, 979 F.2d 45, 49 (5th Cir. 1992);

*United States v. Baclaan*, 948 F.2d 628, 630 (9th Cir. 1991); *United States v. Blackston*,

940 F.2d 877, 891 (3d Cir. 1991).   The state court decisions the defendant cites hold

that "a positive urine test for cocaine and marijuana, *without more*," did not support

convictions for simple possession.   ECF 65 at 4 (citing *State v. Harris,* 178 N.C. App.

723, 726 (2006)).   In this case, there is more:   not only were there two positive drug

tests for methamphetamine, but the defendant admitted to the use of that drug on both

dates at issue, February 15, 2018, and March 8, 2018.[2]   With respect to his February

18 positive UA, the defendant admitted to "chillen (sic) with some girl and she called

over a friend who provided us with methamphetamine and synthetic marijuana."   ECF

50 at 2.   The UA later tested positive for methamphetamine, amphetamine, synthetic

marijuana, and also cocaine.   This evidence is sufficient to prove possession.   *United

States v. Hammonds*, 370 F.3d 1032, 1037 (10th Cir. 2004) ("[I]n the context of

revocation proceedings based on positive drug tests, knowing and voluntary use is

'synonymous with possession.'"); *accord United States v. Crace*, 207 F.3d 833, 837 (6th

Cir. 2000) ("The defendant's positive drug test combined with his admission of use of a

controlled substance mandates a finding that the defendant possessed drugs.").   In

fact, the Tenth Circuit "do[es] not believe that a court, presented with undisputed

evidence of drug use, as shown by a positive drug test, together with evidence that the

---

2 For purposes of this argument, the government relies solely on the defendant's admitted drug
use as stated in Violations 1 and 3.

3

defendant's use was knowing and voluntary, can logically conclude that the defendant has not possessed the drug."   *Hammonds* at 1037.

4.     The defendant argues that the Court can only conclude that his drug tests amount to possession if the Court employs a hypothetical approach to find that, *inter alia,* the defendant could be charged with a federal offense punishable by more than one year.   The defendant bases his hypothetical approach argument on *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010).   In *Carachuri*, the Supreme Court addressed an immigration law challenge brought by an alien who was prosecuted for a misdemeanor, although his conduct was punishable as a felony.   *Id.* at 566.   The *Carachuri* Court concluded that, based on the text of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a)(3), courts must "look to the [alien's actual] conviction itself . . . , not to what might have or could have been charged" to determine whether [the] alien had been convicted of an aggravated felony.   *Id.* at 576.   In short, the Supreme Court rejected a "hypothetical approach" to ascertaining how a prior conviction would be categorized for certain immigration purposes.   *Id.* at 577.

5.     That holding is inapposite to the current case.   In the immigration context at issue in *Carachuri*, the court was categorizing an actual prior conviction, and the interpretive question was whether, even though the actual conviction was a misdemeanor, it could hypothetically have been enhanced and thus risen to felony status.   The court rejected that approach.   In the context of the classification of a revocation offense, the question is whether the conduct, not any specific conviction, is punishable as a felony, and thus the very nature of the inquiry necessarily involves

hypotheticals.    Courts have universally agreed that *Carachuri* does not apply in the classification of revocation offenses.    *United States v. Wynn*, 786 F.3d 339, 343 (4th Cir. 2015) ("Contrary to Wynn's position, nothing in the decision in *Carachuri-Rosendo* . . . prevents a district court from considering the fact of a defendant's prior convictions during such a proceeding. Indeed, the very purpose of a supervised release revocation hearing is to determine the gravity of the breach of trust committed by the defendant in the context of the 'conditional liberty' he was granted following his conviction of the underlying offenses."); *United States v. Seiber*, 516 F. App'x 208, 214 (3d Cir. 2013) (same); *United States v. Brown*, 495 F. App'x 300, 304 (4th Cir. 2012) (same).

6.    In *Seiber*, the court discusses the same argument made by this defendant in depth, and reasoned that a conviction is not required:    "[t]he grade of the violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding.    Rather, the grade of the violation is to be based on the defendant's actual conduct."    *Seiber,* 516 F. App'x at 214 (citing U.S.S.G. § 7B1.1 cmt. n.1.)    Importantly, the court held "it does not matter for purposes of supervised release whether or not the government would have sought enhancement if it had brought new criminal charges against Sieber for his possession of marijuana; it only matters what Sieber's possible punishment could be for his actual conduct."    *Id.*

7.    In fact, since *Carachuri*, in *United States v. Robles*, 447 F. App'x 892 (10th Cir. 2012) (unpublished), the Tenth Circuit has also squarely addressed the issue before this Court.    In that case, Robles made the same argument the defendant makes here:    that a district court "may not consider recidivist status in determining what the

penalty would be." *Id.* at 897.   The court noted this argument was contrary to the plain

language of Section 7B1.1(a), which "requires a court to distinguish between offenses

punishable by a year or less (which are Grade C violations) and those punishable by

more than a year (which are Grade B violations)."   *Id.*   Relying upon Application Note

1 of the commentary to Section 7B1.1, the court held "the more plausible reading of

'actual conduct' is what the defendant actually did, as opposed to what, if anything, he

was charged with, or what, if anything, he was actually convicted of."   *Id.* at 897 (citing

United *States v. Trotter*, 270 F.3d 1150, 1155 (7th Cir. 2001) ("Revocation of supervised

release, in other words, proceeds on real-offense rather than charge-offense principles.

A judge engaged in real-offense sentencing does not ignore prior offenses that affect

the maximum punishment; recidivist enhancements are part of real-offense

sentencing.").

Defendant discounts this opinion as unpublished and unpersuasive given that the

standard of review was plain error.   Nevertheless, the United States respectfully

suggests that the Court consider the Tenth Circuit's detailed treatment of the issue

persuasive.   Courts are universally in agreement that its approach is correct.   *See,

e.g., Wynn*, 786 F.3d at 343-44 ("Accordingly, we hold that the district court did not err

in concluding that Wynn's prior drug convictions increased the extent to which his

marijuana offenses during supervised release were 'punishable' under Section 844(a).

Thus, the district court correctly determined that Wynn's multiple acts of possessing

marijuana during his supervised release constituted Grade B violations under the

Guidelines' Chapter 7 advisory policy statements."); *Cates*, 613 F.3d at 859 ("Cates had

6

prior drug convictions, making his April 2009 drug possession offense a felony and a grade B violation of supervised release."); *United States v. Bungar*, 478 F.3d 540, 544 (3d Cir. 2007) (same); *United States v. McNeil*, 415 F.3d 273, 278 (2d Cir. 2005) (same); *Crace*, 207 F.3d at 835 (same); *Trotter*, 270 F.3d at 1154 (same).

8.      The case law clearly refutes the defendant's objection.   Accordingly, the United States respectfully requests that the Court find the defendant's admitted and verified use of methamphetamine, as alleged in Violations 1 and 3, to be Class B violations.   The advisory guideline range for these offenses is 21-27 months in prison.[3]

**Government's Sentencing Statement**

9.      While the government seeks a ruling from this Court that the defendant's admitted use of methamphetamine, as alleged in Violations 1 and 3, constitute Grade B violations, it will not seek a sentence within the advisory guideline range for Grade B violations for this defendant (with a criminal history category of IV) for the following reason:   The government does not believe the defendant's violations – positive UAs on two dates and possession of a cell phone – warrant a sentence within the 21-24 month range.

10.      However, it *will* ask the Court to consider that the defendant quickly breached the trust placed in him when he was granted "conditional liberty" following his release from imprisonment for his conviction for possession of a firearm by a previously convicted felon.      *Wynn*, 786 F.3d at 343.   Specifically, he tested positive for controlled substances within days of release from his 39-month prison sentence.   ECF

---

[3] The maximum term of imprisonment is 24 months, pursuant to Title 18, Section 3583(e)(3).

50, 66.    Based upon the defendant's request for assistance with his addiction problem,

his Probation Officer secured placement for the defendant at the Stout Street

Foundation Residential Treatment Program with such treatment to begin approximately

one month after the defendant's positive UA on February 15, 2018.    But before the

defendant could begin the program, he tested positive once again for

methamphetamine, this time on March 8, 2018.    He started the program on March 22,

2018, and two months later, the Probation Officer was notified that the defendant had

been discharged from that program for the violations addressed above.    ECF 50 at 3.

11.    The defendant's criminal history category is IV and his history includes

violent behavior such as assault, domestic violence, and harassment.    Given the

defendant's criminal history, and his notable substance abuse addiction, the defendant

poses a risk to the public.    A period of incarceration is warranted to impart upon the

defendant the need for his compliance with all of the conditions of his supervised

release. The government submits a sentence of **8 months in prison followed by two**

**years of supervised release** will satisfy all of the sentencing objectives of Title 18,

United States Code, Section 3553(a), and is sufficient but not greater than necessary to

achieve these objectives.

12.    Given that the defendant's problems primarily stem from substance abuse

and mental health issues, the government concurs with the special conditions

recommended by the Probation Office, to include, *inter alia,* placement in and

completion of a residential inpatient or outpatient treatment program, cognitive behavior

and mental health treatment, imposition of the search condition as requested, as well as

50 hours of community service.

Respectfully submitted,

ROBERT C. TROYER
United States Attorney

 /s Martha A. Paluch
Martha A. Paluch
Assistant U.S. Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: Martha.paluch@usdoj.gov

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on September 4, 2018, I electronically filed the foregoing with the Clerk of Court using the ECF system that will send notification of such filing to all parties of record.

 /s Martha A. Paluch
Martha A. Paluch
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: Martha.paluch@usdoj.gov