IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 13-cr-00314-RBJ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

QUINCY CUMMINGS,

        Defendant.

_____

### DEFENDANT'S OBJECTION TO PROBATION'S CHARACTERIZATION OF DRUG USE AS GRADE B VIOLATIONS
_____

Defendant Quincy Cummings ("Mr. Cummings"), through undersigned counsel, objects to treating drug use violations as Grade B Violations. In support, he states:

### ISSUE PRESENTED

Whether Probation's determination Mr. Cummings's drug use (the conduct that would determine his guidelines range) constitutes a Grade B violation, rather than a Grade C violation of his supervised release is correct.

### SUMMARY OF ARGUMENT

Use of controlled substances is not punishable under Colorado's Unlawful Possession of a Controlled Substance law, Colo. Rev. State. § 18-18-403.5 (eff. July 1, 2015). This is partly because of a mens rea issue: there are situations when drugs can enter a person's system without his knowing possession. But, even putting mens rea aside, Mr. Cummings's positive UA's would not be enough to constitute a violation of possession under state law.

Further, even if Mr. Cummings's conduct were punishable as possession under state law, the conduct would not be punishable by over one year in custody. Rather, the presumptive range for possession of a Schedule II controlled substance in Colorado is 6-12 months.  Notwithstanding the existence of certain status-based recidivism enhancements (called aggravators under Colorado law) that could be used to raise a sentence above this otherwise maximum term if proven in the appropriate case, twelve months is the ceiling of punishment for the violation conduct itself.

## ARGUMENT

**I. Mr. Cummings admitted conduct that, at most, constitutes the crime of use of a controlled substance under Colorado law**

Admittedly, Mr. Cummings *used* controlled substances while under supervision. However, Probation has not presented any additional facts to prove that his true conduct constituted the *possession* of, rather than the use of, drugs.

No Colorado case has held that a defendant can be charged with (let alone be convicted of) possession of a controlled substance based solely on prior use. No case has held that a positive urine test alone can support such a charge.[1] And no case has

---

[1] Almost every state to consider the question explicitly has held that a positive urine test alone cannot support a conviction for possession of the drug consumed. *See, e.g., State v. Thronsen,* 809 P.2d 941 (Alaska App. 1991); *State v. Flinchpaugh*, 232 Kan. 831 (1983); *State v. Vorm*, 570 N.E.2d 109, 111 (Ind. Ct. App. 1991); *State v. Lewis*, 394 N.W.2d 212 (Minn. App. 1986); *In re R.L.H.*, 116 P.3d 791, 795–96 (Mont. 2005); *State v. McCoy*, 864 P.2d 307, 313 (N.M. 1993); *State v. Harris*, 178 N.C. App. 723 (2006); *Logan v. Cox*, 89 Ohio App. 349 (1993); *Jackson v. State*, 833 S.W.2d 220, 223 (Tex. App. 1992); *State v. Sorenson*, 758 P.2d 466, 468 (Utah Ct. App.1988); *State v. Hornaday*, 105 Wash. 2d 120 (1986); *State v. Griffin*, 584 N.W.2d 127, 131 (Wis. 1998); *but see State v. Schroeder*, 674 N.W.2d 827, 831 (S.D. 2004).

2

held that a positive urine test, in combination with the admission of voluntary use (the facts here), can support such a charge.

That his conduct did not constitute possession under Colorado law is clear not only from the absence of any Colorado cases that would support such a finding, but also from structure of Colorado's controlled substance offenses. Mr. Cummings's conduct constituted the Colorado offense of use of a controlled substance, which is punishable by no more than 12 months in jail. But it is not proper to conclude that his conduct constitutes the Colorado crime of possession.

Use and possession of a controlled substance are two different crimes in Colorado, with two different sets of applicable penalties, serving two different purposes. Unlawful possession of a schedule II controlled substance is a level four drug felony. Colo. Rev. Stat. § 18-18-403.5 (eff. July 1, 2015). The presumptive range for a level four drug felony is 6-12 months of custody, and the aggravated range is 1-2 years. Colo. Rev. Stat. § 18-1.3-401.5(2)(a) (eff. March 20, 2015). Unlawful use of a controlled substance is a level 2 drug misdemeanor, punishable by 0-12 months of custody. Colo. Rev. Stat. §§ 18-18-404 (eff. Oct. 1, 2013); 18-1.3-501(1)(d) (eff. July 1, 2018).

The Colorado Supreme Court has explained the difference between these penalties. Possession carries a higher possible penalty, because "[o]ne who possesses controlled substances poses a greater threat to the preservation of public peace, health and safety." *People v. Cagle*, 751 P.2d 614, 620 (Colo. 1988) (internal quotation marks and citation omitted). "[T]he proscription of possession, without more, facilitates the enforcement of the law against traffickers by eliminating the burden of proving a transfer." *Id.* (quotation marks and citation omitted). On the other hand, use carries a lower penalty,

because "[o]nce a person uses a controlled substance; he primarily threatens only his own health and well-being." *Id.*

Moreover, the Colorado Supreme Court "noted" over fifty years ago "that 'the containment of a consumed narcotic within a person's blood or respiratory system is not constructive possession.'" *Id.* at 620 n. 6 (quoting *People v. McKenzie*, 458 P.2d 232, 235 (Colo. 1969)). While a person generally possesses a drug before using it, he no longer possesses the drug after it has been consumed. *Id.* at 620. "Once he uses the [drug], he no longer possesses it. Use and possession are . . . not identical acts." *Id.*

Colorado law distinguishes between use and possession of a controlled substance. It does so for the principled reason that a person primarily poses a danger to himself once he has fully consumed his drugs (rather than to society, as he does when there is still the opportunity to sell the drugs possessed). Therefore, it is fair to infer that the absence of case law allowing a charge of or conviction for possession, when no actual drugs remain in a defendant's possession, is because those facts do not legally support a finding of possession under Colorado law.

Under Colorado law, past voluntary consumption of a controlled substance is not sufficient to support a conviction for possession of a controlled substance, where no additional drugs were possessed and not consumed.[2] Voluntary consumption under these

---

[2] The 10th Circuit's decisions in *United States v. Rockwell*, 984 F.2d 1112 (10th Cir. 1993), and *United States v. Hammonds*, 370 F.3d 1032 (10th Cir. 2004), do not suggest a contrary conclusion. Those cases interpreted the word "possession" as used in a specific federal sentencing statute, 18 U.S.C. § 3583(g). *See Rockwell*, 984 F.2d at 1114 ("We hold that a controlled substance in a person's body is in the possession of that person *for the purposes of 18 U.S.C. § 3583(g),* assuming the required *mens rea.* 'Use'

4

circumstances supports a conviction for use of a controlled substance only, an offense punishable by a jail sentence of no more than one year. Therefore, Mr. Cummings committed only Grade C violations of his supervised release.

### II.   Mr. Cummings's actual *conduct* – even if it constitutes the crime of possession – is punishable only by one year in custody

Even if this Court finds that Mr. Cummings's violation conduct constitutes the offense of possession of a Schedule II narcotic under Colorado law, Mr. Cummings still committed only Grade C violations of supervised release. The maximum penalty for possession conduct alone (called the "presumptive penalty" by the state) is 12 months. This is the appropriate maximum penalty for the Court to consider, because, as Mr. Cummings argued in the district court, Section 7B1.1 looks only to the maximum punishment for the offense constituted by the violator's conduct, *without* reference to status-based sentencing enhancements.

That Section 7B1.1 prohibits consideration of status-based sentencing enhancements is suggested by the text of the policy statement and made clear in Application Note 5. Application Note 5 addresses those situations where a supervisee with a prior felony conviction possesses a firearm in violation of 18 U.S.C. § 922(g). As the Application Note makes clear, the supervisee's status as a felon can be considered for the limited purpose of determining what *offense* his conduct constitutes. But status-based enhancements to

---

*in this context* is synonymous with possession.") (emphasis added); *Hammonds*, 370 F.3d at 1036 (considering whether congressional amendment to Section 3583 "effectively superseded *Rockwell*'s holding"). Here, the Court is faced with the significantly different issue of what substantive Colorado offense is constituted by certain conduct.

5

922(g) sentences, such as the Armed Career Criminal Act (ACCA), cannot be taken into account when determining how that conduct could be punished.

### a. Colorado's sentencing scheme.

Unlawful possession of a schedule II controlled substance is a level four drug felony under Colorado law. Colo. Rev. Stat. § 18-18-403.5 (eff. July 1, 2015). The presumptive sentencing range for a level four drug felony is 6-12 months of custody, and the aggravated custodial range is 1-2 years. Colo. Rev. Stat. § 18-1.3-401.5(2)(a) (eff. March 20, 2015).

In *Lopez v. People*, 113 P.3d 713 (Colo. 2005), the Colorado Supreme Court held that Colorado's presumptive sentencing scheme was governed by the constitutional limitations described in *Blakely v. Washington*, 542 U.S. 296 (2004). Because a "trial judge must impose a sentence within the presumptive range unless he or she engages in the extraordinary aggravating or mitigating circumstances analysis . . . the rule of *Blakely* applies and any additional facts used to aggravate the sentence must be *Blakely*-compliant or *Blakely*-exempt." *Id.* at 726. Although the court in *Lopez* expected that the state legislature would quickly change the state's sentencing scheme, *id.* at 716, it has not done so, and the top of the presumptive sentencing range remains the statutory maximum sentence for *Blakely* purposes. *See Mountjoy v. People*, 430 P.3d 389, 395 (Colo. 2018).

It is correct that this statutory maximum sentence can be changed based on certain factors enumerated in the relevant statutes, as long as the procedure used to find that those factors exist complies with the U.S. Constitution. For example, with regarding to enhancements based on a person's status, such as being on parole or probation, the sentences can be aggravated based on findings of a judge under *Almendarez–Torres v. United States*, 523 U.S. 224 (1998). Even when based on the status of the offender and

6

therefore judge-found, however, the aggravating factors are enhancements that raise what is otherwise a maximum sentence under *Blakely*.

Application Note 5 demonstrates that a district court judge is not to consider such enhancements when determining a supervisee's grade of violation. Under Section 7B1.1, the maximum sentence for Mr. Cummings's conduct was only 12 months.

      **b. Application Note 5 demonstrates that courts are not to consider status-based sentencing enhancements, like Colorado's aggravating factors, when determining the grade of violation.**

A district court is tasked with determining whether a supervisee's violation, inter alia, was (1) "conduct constituting . . . [an offense] punishable by a term of imprisonment exceeding twenty years" (Grade A); (2) "conduct constituting . . . [an offense] punishable by a term of imprisonment exceeding one year;" (Grade B); or (3) "conduct constituting" a non-criminal violation of the conditions of supervision, or an offense "punishable by a term of imprisonment of one year or less" (Grade C). U.S.S.G. § 7B1.1. Thus, a district court needs to determine what the relevant offense is (if any), and what the relevant offense is punishable by.

All supervisees have prior convictions. All are under court supervision. Many have prior deportations. These are three facts that might be elements of offenses, or which might serve to enhance a supervisee's sentence if the supervisee were to actually be prosecuted for the underlying offense. This raises two more questions for the district court. First, can the court consider these statuses when determining what offense is constituted by supervisee's conduct? And second, can the court consider these status when determining what that conduct is punishably by?

Application Note 5 clearly answers both of these questions. Application Note 5 states:

7

> Where the defendant is under supervision in connection with a felony conviction, or has a prior felony conviction, possession of a firearm (other than a firearm of a type described in 26 U.S.C. § 5845(a)) will generally constitute a Grade B violation, because 18 U.S.C. § 922(g) prohibits a convicted felon from possessing a firearm. The term "generally" is used in the preceding sentence, however, because there are certain limited exceptions to the applicability of 18 U.S.C. § 922(g). *See, e.g.*, 18 U.S.C. § 925(c).

U.S.S.G. § 7B1.1, Commentary, Application Note 5. By addressing the different issues that can arise when a felon possesses a firearm while on supervised release, the Application Note confirms that status may be considered if it is an element of an offense, but it may not be considered when it is merely a sentencing enhancement.

The example in this Application Note does three things. First, it explains that the conduct engaged in by the supervisee is possession of a firearm. Second, it states that this conduct generally constitutes the federal criminal offense of felon in possession of a firearm where the supervisee is a felon, meaning that courts are to consider status elements when determining the grade of violation. And third, by leaving no room for consideration of the ACCA, it shows that status-based sentencing enhancements are not to be part of the court's equation.

By default, possession of a firearm by a convicted felon is punishable by no more than ten years in prison. 18 U.S.C. § 924(a)(2). However, where a person has three prior convictions for violent felonies or serious drug offenses, the person is punishable by 15 years to life imprisonment under the ACCA. 18 U.S.C. § 924(e)(1); *Johnson v. United States*, 559 U.S. 133, 136 (2010). The ACCA is a recidivist sentencing enhancement. It increases the statutory maximum sentence for the offense of felon in possession of a firearm based on a defendant's status when he committed the crime. Were a court re-

8

quired (or even permitted) to look to sentencing enhancements based on prior convictions, then possession of a firearm by a felon supervisee could constitute a Grade B violation (because his conduct might be punishable by 10 years) *or* a Grade A violation (because his conduct might be punishable with a life sentence). But Application Note 5 does not allow that.[3]

Mr. Cummings recognizes the existence of unfavorable decisions on this question. But, those cases are not binding on this Court, and they are unpersuasive due to their failure to address the clear direction from Application Note 5. For example, in the unpublished case *United States v. Robles*, 447 Fed. Appx. 892 (10th Cir. 2012), this Court addressed a very similar district court decision on plain error review. The Court did not have this argument before it, however, and therefore did not consider this aspect of Application Note 5. And contrary out of circuit cases do not address Application Note 5 at all. *See, e.g., United States v. Wynn*, 786 F.3d 339, 343 (4th Cir. 2015); *United States v. Jolibois*, 294 F.3d 1110 (9th Cir. 2002); *United States v. Trotter*, 270 F.3d 1150 (7th Cir. 2001); *United States v. Crace*, 207 F.3d 833 (6th Cir. 2000); *United States v. Boisjolie*,

---

[3] The Application Note's use of the word "generally" does not suggest otherwise. Rather, the Application Note itself explains that it uses the word because some felons have had their federal firearms rights restored and therefore they have not actually committed a crime under Section 922(g). *See* U.S.S.G. § 7B1.1, Commentary, Application Note 5 ("The term 'generally' is used in the preceding sentence, however, because there are certain limited exceptions to the applicability of 18 U.S.C. § 922(g)") (citing 18 U.S.C. § 925(c)); 18 U.S.C. § 925(c) (providing authority to Attorney General to restore convicted felon's firearms privileges). Thus, the Application Note's use of the word "generally" is meant to clarify the circumstances where a person will not have violated federal law at all. In that case, possession of a firearm by a supervisee might be no violation at all. It might be a violation based on state or local law. It might be a technical (Grade C) violation, because the person's conditions of supervision prohibit possession of any weapon. But it is *never* a Grade A violation based on the ACCA recidivism enhancement.

9

74 F.3d 1115 (11th Cir. 1996). Consideration of the full text of Application Note 5 is critical to any determination of what a supervisee's violation conduct is punishable by. And as explained above, Application Note 5 makes clear that a court is not to consider recidivism enhancements.

Moreover, it makes sense that Application Note 5 prohibits the district court from considering recidivism enhancements. Indeed, this is consistent with the theory behind the Chapter 7 policy statements, the language of Section 7B1.1, and the structure of the guidelines generally. The Commission's approach in the Chapter 7 policy statements is to treat supervised release violations "as a breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S.S.G. Chapter 7, Part A(3)(B). Then, following the guidelines as a whole, Chapter 7 distinguishes between the underlying violation conduct on the one hand and the criminal history of the violator on the other. Section 7B1.1 explains that the seriousness or grade of the underlying violation is based on the supervisee's "conduct." Section 7B1.4 then sets out a revocation table with the grade of violation on the vertical axis (just like offense level is on the vertical axis of the Sentencing Table), and the supervisee's criminal history category on the horizontal axis. Although it is not impermissible per se under the guidelines to consider an offender's criminal history or offense-related status outside of the criminal history category context, it is not the default. So it is logical and fully consistent for Section 7B1.1 to distinguish between conduct and status as it does.

For the purposes of Section 7B1.1, a Colorado aggravated sentence is the equivalent of an ACCA enhancement (and, incidentally, of a 21 U.S.C. § 851 enhancement of

a federal drug possession sentence). Both are recidivism sentencing enhancements. Although they can be based on findings of a judge under *Almendarez–Torres*, they nonetheless serve to raise what is otherwise a maximum sentence under *Blakely* based on the status of the offender. Neither can be considered when determining the proper grade of violation of supervised release.

Given a proper understanding of Colorado's sentencing law and the clear direction provided by Application Note 5, it is easy to determine that Mr. Cummings's conduct constituted an offense punishable by no more than 12 months imprisonment. Thus, even if his conduct constituted the crime of possession of the Schedule II controlled substance under Colorado law, Mr. Cummings committed only a Grade C violation of supervised release in this case, not a Grade B violation as the district court determined.

WHEREFORE Defendant respectfully requests that this Court find that the violations committed in this case were Grade C, not Grade B violations.

    Respectfully submitted,

    VIRGINIA L. GRADY
    Federal Public Defender


    s/ Edward R. Harris
    Edward R. Harris
    Assistant Federal Public Defender
    633 17th Street, Suite 1000
    Denver, CO  80202
    Telephone:  (303) 294-7002
    FAX:  (303) 294-1192
    Edward_Harris@fd.org
    Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2019, I electronically filed the foregoing:

**DEFENDANT'S OBJECTION TO PROBATION'S CHARACTERIZATION OF DRUG USE AS GRADE B VIOLATIONS**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

    Martha Ann Paluch
    Assistant U.S. Attorney
    Email:  Martha.paluch@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Quincy Cummings   (U.S. Mail)


    s/ Edward R. Harris
    Edward R. Harris
    Assistant Federal Public Defender
    633 17th Street, Suite 1000
    Denver, CO  80202
    Telephone:  (303) 294-7002
    FAX:  (303) 294-1192
    Edward_Harris@fd.org
    Attorney for Defendant